MOORE & McCORMACK CO., Inc., v. HESSLEIN et al.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

No. 26.

SHIPPING ⟐—104—CONTRACT OF AFFREIGHTMENT—SUBSTITUTION OF VESSELS.

Under a contract by managers of a steamer line to carry cargo by one of its steamers, "or by a steamer or steamers to be named later," the shipper was entitled to carriage by a steamer of such line, and not required to accept as a substitute a naval transport of a foreign government on which the managers, as brokers, had engaged cargo space.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Moore & McCormack Company, Incorporated, against Edgar J. Hesslein and another. Decree for libelant, and respondents appeal. Reversed.

Gustave Lange, Jr., and Frederick R. Graves, both of New York City, for appellants.

Kirlin, Woolsey & Hickox, of New York City (Mark W. Maclay, Jr., and John M. Woolsey, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. Moore & McCormack Company, Incorporated, managing agents of the Commercial South American Line, which was the trade-name for a line of steamers owned or operated by them, filed this libel against Neuss, Hesslein & Co., to recover damages for breach of a contract, the material provisions of which are as follows:

| Moore & McCormack Co., Inc., Managers. | Managing Agents: |
|---|---|
| Commercial South American Line Brazilian Ports, River Plate Ports. (Flag bearing initials 'M. & McC'.). West Indies, Mexican-Cuban ports. Central American and North Coast South American Ports. | Clinchfield Navigation Co., Inc., U. S. Atlantic and Gulf Service. Notice— The company assumes no responsibility for any refusals given that are not issued on this refusal form, and that are not signed by one of the company's officers. |

New York, April 10, 1916.

Messrs. Neuss, Hesslein & Company, 43 White Street, New York, N. Y.— Dear Sirs: We confirm contract for freight room under deck cargo as stated below, for shipment on the steamer Mooremack, or by a steamer or steamers to be named later, shipment in whole or part cargo, via port or ports in or out of customary order, at steamer's option.

Cargo as follows:

One thousand (1,000) compressed bales cotton at four and one-quarter cents (4¼ c.) lb. landed.                    New York Rio Janeiro

It is expressly understood and agreed that all shipments are made subject to the terms and conditions of the Moore & McCormack Company, Incorporated, form of shipping receipt and bill of lading, and the conditions contained therein are made a part of this contract. All lighterage at risk and expense of the cargo. Freight to be prepaid on the signing of bills of lading, at New York and earned, steamer and/or goods lost or not lost at any stage of the transit. * * *

---

⟐—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lay days, if required by shippers, not to count before April 29, 1916. Shippers option of canceling, if steamer not ready to receive cargo by 6 p. m. on May 31, 1916. The Moore & McCormack Company, Incorporated, has the option of designating loading and/or discharging berths. If the Moore & McCormack Company, Incorporated, does not avail itself of this option, the consignor and/or consignee to supply berths, immediately upon the readiness of steamer to load and/or discharge.

Yours very truly,        Moore & McCormack Company, Inc.,
                                       By A. V. Moore, Pres.

We accept and confirm the contract.
        Neuss, Hesslein & Co., per M. J. Cuffe.
New York, April 10th, 1916.

May 10, 1916, as the steamer Mooremack could not arrive in time to load before May 31, the libelant designated the steamer Sargento Albuquerque as a substitute. This steamer was loading general cargo, and was not one of the Commercial South American Line, nor owned nor operated by Moore & McCormack Company, Incorporated. May 11, the respondents declined to ship on her.

It is contended that the only reason given by the respondents was that the Sargento Albuquerque did not have the requisite rating, and therefore that this is the only defense upon which they have a right to stand. But the answer alleged, among other things, that she was not a proper steamship in accordance with the terms of the agreement, which said nothing about ratings. Besides, at the trial, the respondents testified that they had objected to the steamer because they were dealing with the Moore & McCormack Line, and also produced testimony of custom that under such a line contract a substituted vessel must be one of the same line. We think they have a right to rely upon this defense also.

The first question, therefore, is whether under this contract the tender of freight room on a steamer loading general cargo, not one of the Commercial South American Line, and not owned or operated by the Moore & McCormack Company, was good. What the Moore & McCormack Company did was to get, as brokers, an option for shipping the respondents' cargo on the Sargento Albuquerque; that steamer being liable to them for brokerage if the goods were shipped. We think the tender was not good. The Moore & McCormack Company were acting, not as brokers, with Neuss, Hesslein & Co., but as principals. The contract executed is on the printed form of their line, and provides that the shipment is to be subject to the terms and conditions of the Moore & McCormack Company form of bill of lading and shipping receipt, which are made a part of it. The bill of lading describes it as a "regular line of steamers for Brazilian ports," and refers to "all vessels of this line" and to the "customary ports of this line." We have no doubt that the contract is to be construed as one for shipment on a steamer of the line. If it had been made with either the American, French, Cunard, White Star, or any other regular well-known line of steamers, no one would have pretended that such company would fulfill it by engaging freight room on a general ship not owned or operated by it.

But if it were to be held that such a vessel could be substituted, we think that the particular steamer Sargento Albuquerque should not

be considered a proper tender. She was a transport of the Brazilian navy, commanded by a lieutenant of that navy. The shipment, if made, would have been in the possession of the Brazilian government, and if it had been damaged or lost the respondents could not have proceeded against the Brazilian government, it being a sovereign, in personam, nor against its steamer, in rem. The fact, also, that the steamer was getting very much lower rates of freight than the market rates may very well have reflected to some extent the views of commercial people on this point. We need not consider the questions discussed in respect to the measure of damages.

The decree is reversed.